IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENNETH SWOFFORD,                                          3:12-cv-00557-MA

        Plaintiff,                                    OPINION AND ORDER

  v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

BRUCE W. BREWER
P.O. Box 421
West Linn, Oregon 97068

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

JORDAN D. GODDARD
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Kenneth Swofford, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for SSI and DIB on December 14 and 19, 2007, respectively, alleging disability due to "[p]ulmonary embolism, blood clots in [one] lung." Tr. 152. His applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on April 14, 2010, at which plaintiff was represented by counsel and testified. Vocational Expert (VE) Francis Summers was also present throughout the hearing and testified.

On May 7, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

///

2 - OPINION AND ORDER

## FACTUAL BACKGROUND

Born on November 22, 1961, plaintiff was 40 years old on the alleged onset date of disability and 48 years old on the date of the hearing. Plaintiff has a high school equivalency with some college coursework, and has past relevant work as an outside deliverer. Tr. 58, 83-84.

Plaintiff alleges his disabilities became disabling on January 1, 2002. In addition to the hearing testimony, plaintiff submitted an Adult Function Report. Tr. 180-87. Tammy Ladd, plaintiff's girlfriend, submitted a Third Party Function Report. Tr. 188-95. Kurt Brewster, MD, examined the plaintiff and submitted a comprehensive pulmonary exam. Tr. 264-81.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

3 - OPINION AND ORDER

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 1, 2002. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 25.

At Step Two, the ALJ determined that plaintiff's thromboembolic disease with chronic anticoagulation therapy, degenerative disc disease of the cervical spine, degenerative joint disease of the left ring finger, and right ulnar neuropathy are severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 26.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 26-27.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform sedentary work, except that plaintiff can only perform tasks that involve no more than two hours of standing or walking, and six hours of sitting, in an eight-hour workday; must be permitted to sit or stand at will; must avoid overhead reaching; and can only occasionally balance, stoop, kneel, crouch, crawl, or climb stairs or ramps. The ALJ limited plaintiff to frequent handling, fingering, or feeling, and plaintiff must avoid even moderate exposure to fumes, odors, dusts, or other respiratory irritants. Finally, plaintiff must avoid exposure to workplace

4 - OPINION AND ORDER

hazards, such as moving machinery or unprotected heights. Tr. 27-30.

At Step Four, the ALJ found that plaintiff is unable to perform any past relevant work. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 30.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Charge Account Clerk, Addresser, and Assembler of Optical Goods. See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 31.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises six issues on appeal. First, plaintiff claims that the ALJ erred at Step Two by failing to list "nerve compression" and a herniated cervical disc as severe impairments. Second, plaintiff maintains that the ALJ erroneously found that plaintiff's back impairments did not meet the criteria for being a listed impairment at Step Three. Third, plaintiff argues that the ALJ erroneously discredited his testimony. Fourth, plaintiff submits that the ALJ cited inadequate reasons to reject the lay testimony of his girlfriend, Ms. Ladd. Fifth, plaintiff argues that the ALJ erred by failing to define the frequency of alteration in the "sit/stand option" the ALJ posed in the vocational

5 - OPINION AND ORDER

hypothetical. Finally, plaintiff claims that the ALJ erred by failing to obtain an explanation from the VE for alleged significant divergences from the Dictionary of Occupational Titles (DOT).

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

///

///

///

6 - OPINION AND ORDER

## DISCUSSION

### I. Step Two

Plaintiff first argues that the ALJ erroneously omitted plaintiff's herniated cervical disc and C-7 nerve root compression at Step Two. This argument lacks merit. The ALJ listed degenerative disc disease of the cervical spine as a severe impairment. Tr. 26. Degenerative disc disease is a general term used to describe degenerative changes in spinal discs that can result in herniated discs and pressure on spinal nerve roots. See 3 Robert K. Ausman & Dean E. Snyder, Medical Library Lawyers Edition §§ 4:1, 4:38 (1989). Thus, the ALJ adequately incorporated plaintiff's herniated disc and nerve root compression at Step Two by listing degenerative disc disease as a severe impairment. The ALJ also adequately incorporated plaintiff's limitations caused by his herniated disc and C-7 nerve root compression into the RFC. Thus, even if the ALJ erred in failing to specifically list these conditions at Step Two - which he did not - any such error would be harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

### II. Step Three

Plaintiff next argues that the ALJ erred at Step Three by failing to find that plaintiff's upper back impairments met the spinal disorder listing in 20 C.F.R. Subpart P App. 1. Specifically, plaintiff argues that the record contains evidence

7 - OPINION AND ORDER

that establishes that plaintiff's condition meets listing 1.04(A). I disagree.

For a condition to qualify as a listed impairment at Step Three, the plaintiff must demonstrate that the condition meets "*all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

Plaintiff argues that his back condition meets the requirements of listing 1.04(A).[1] Listing 1.04(A) applies to disorders of the spine resulting in compromise of a nerve root or the spinal cord, with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, App. 1 (emphasis added). The ALJ found that plaintiff had not exhibited any motor loss. Tr. 27. This finding is supported by substantial evidence. After examining plaintiff, Dr. Brewster found that plaintiff had shown "[n]o fine or gross motor deficits by history or exam." Tr. 273. During the examination, plaintiff demonstrated full motor strength. See tr.

---

[1] Although there are two additional sets of criteria that can satisfy listing 1.04, plaintiff only argues that 1.04(A) is applicable to this case. I agree.

272. Thus, the ALJ did not err in finding that plaintiff's back impairments did not meet listing 1.04(A). The ALJ properly concluded that plaintiff was not disabled at Step Three.

### III. The RFC

#### A. Rejection of Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation

9 - OPINION AND ORDER

in weighing the claimant's credibility. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, plaintiff testified that his difficulty breathing and recurrent pulmonary embolisms are his most limiting conditions. Tr. 62. Accordingly, plaintiff testified that he has difficulty walking more than 50 feet or climbing stairs and inclines. Tr. 62, 68-69. Plaintiff stated that his next most serious limitation was the herniated disc in his left shoulder, which caused him to lose feeling in his fingers and down his arm. Tr. 62-63. Plaintiff reported that he can take care of personal hygiene and shop for himself, but cannot do any household chores. Tr. 66-67. Plaintiff stated that he can only sit and stand for two hours out of every day, and has to spend much of the rest of the day lying down. Tr. 69-70. When asked how much he could lift, plaintiff said he could not lift a gallon of milk. Tr. 71. Plaintiff testified that he has difficulty grasping with his hands and engaging in fine finger manipulation. Tr. 71-72.

In his Adult Function Report, plaintiff stated that he wakes at about 10:00 am, eats breakfast, and then watches television until 11:30 am. Tr. 180. He lays on the couch with his feet elevated for thirty minutes "numerous [times] a day." Plaintiff reported he takes a one-and-a-half to two hour nap around 3:00 pm. <u>Id.</u> When he wakes, he eats dinner, watches television, and goes to bed around midnight. <u>Id.</u> Plaintiff reported that he wakes up

during the night with severe neck pain and cannot get back to sleep. Tr. 181. Plaintiff stated that he cannot do yard work because of difficulty breathing and his herniated disc. Tr. 182-83. Plaintiff checked that his conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, concentrate, use his hands, and get along with others. Tr. 185. In addition, plaintiff stated that he could only walk ten to fifteen yards before requiring a five minute break. Id.

The ALJ discredited plaintiff's testimony because his subjective complaints are not fully supported by objective medical findings, plaintiff elected conservative treatment for his conditions, worked after the alleged onset date of disability, quit his most recent job prior to the alleged onset date for reasons unrelated to disability, and worked full time for several years after the diagnosis of his cardiopulmonary condition. Tr. 27-30. I find these reasons, taken together, constitute clear and convincing reasons to discredit plaintiff's testimony.

The ALJ first noted that plaintiff's subjective complaints were not fully supported by objective evidence in the medical record. This finding is supported by substantial evidence. While a claimant's subjective complaints may not be rejected solely because they are not fully corroborated by objective evidence, lack of such corroboration is one factor that may be considered. See Thomas, 278 F.3d at 960.

11 - OPINION AND ORDER

Plaintiff alleged that he could only walk approximately ten to fifteen yards before requiring rest to catch his breath. Tr. 68, 185. Yet, at his pulmonary examination, plaintiff walked for 13 minutes on a slight incline before feeling fatigued, and did so without a significant increase in his rate of respiration. Tr. 270, 273. With respect to his breathing difficulties, an October 2008 spirometry test showed "minimal obstructive lung defect." Tr. 353. Dr. Brewster also noted that plaintiff had a "borderline" elevated respiration rate at rest, but that it did not increase significantly on exertion, and plaintiff had "normal breath sounds." Tr. 273.

As the ALJ noted, with respect to plaintiff's allegations of right shoulder pain, plaintiff exhibited a full range of motion and had an unremarkable x-ray. Tr. 340, 349. In addition, as the ALJ also noted, a nerve conduction velocity study revealed a nerve dysfunction or injury in the right elbow of "moderate severity," that plaintiff chose to treat conservatively by wearing a neoprene sleeve. Tr. 395-96. The ALJ appropriately discredited plaintiff's subjective complaints in part because they were not fully consistent with objective medical evidence.

The ALJ also rejected plaintiff's subjective testimony because plaintiff chose to pursue conservative treatment for his conditions. A conservative course of treatment is a proper basis on which to reject a claimant's testimony of severe impairment.

12 - OPINION AND ORDER

Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). As noted above, plaintiff "wish[ed] to treat [his ulnar neuropathy] conservatively with avoidance of pressure on the elbow and avoidance of elbow flexion." Tr. 396. Plaintiff received a prescription for a neoprene sleeve. Id. Similarly, in 2006, plaintiff was offered neck surgery to help symptoms from his herniated disc, but he ultimately refused. Tr. 338, 343, 389. The ALJ reasonably concluded that plaintiff's election of conservative treatment for his impairments was inconsistent with his testimony of debilitating symptoms.

The ALJ also noted that plaintiff's work history is inconsistent with his allegations of disability. As the ALJ noted, plaintiff alleged disability beginning January 1, 2002, but testified that he performed full time maintenance for Diamond Lake Improvement Company from May through November 2002. Tr. 60, 152.² Additionally, the ALJ noted that plaintiff first experienced lung problems in 1979, but worked for many years thereafter. Compare Tr. 265, 268 (noting lung impairments first diagnosed in 1979) with Tr. 172-79 (describing partial work history). Finally, as the ALJ noted, plaintiff left the job immediately preceding his alleged

---

² Plaintiff misses the mark in arguing that the ALJ's citation of this fact was invalid because plaintiff is limited to receiving past benefits beginning in 2005 due to a prior disability adjudication. The ALJ's reference to 2002 work was not part of a substantial gainful activity analysis. Rather, the ALJ properly cited plaintiff's 2002 work as inconsistent with his allegation of disability beginning January 1, 2002.

13 - OPINION AND ORDER

onset date of disability not because of health problems, but because of "[i]rreconcilable differences [with] the new management." Tr. 61; see Burton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (rejecting a claimant's testimony in part because he left a job after being laid off, rather than for health reasons). The ALJ reasonably cited inconsistency between plaintiff's work history and disability allegations in discrediting plaintiff's testimony. In sum, I conclude that the above reasons, taken together, constitute clear and convincing reasons for discrediting plaintiff's testimony.

### B. Rejection of Lay Testimony

Plaintiff next argues that the ALJ improperly rejected the testimony of Tammy Ladd, plaintiff's girlfriend. Lay testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

Ms. Ladd lives with plaintiff and spends time with him every day. Tr. 188. She reported that plaintiff "[d]oesn't do much. He has a hard time breathing when he is active." Id. Ms. Ladd stated that plaintiff "doesn't sleep through the night," and that his "legs [and] neck hurt often." Tr. 189. Additionally, Ms. Ladd reported that plaintiff lives a largely sedentary, solitary life.

14 - OPINION AND ORDER

See tr. 189-93. Ms. Ladd checked that plaintiff's conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, concentrate, understand, use hands, and get along with others. Tr. 193. She further reported that plaintiff can only walk 20 to 30 feet before he must rest for five to ten minutes. Id.

The ALJ rejected Ms. Ladd's testimony because it was inconsistent with medical and other evidence indicating plaintiff is capable of greater functioning. Tr. 30. This conclusion is amply supported by the record. As the ALJ noted, plaintiff himself reported to treating physician David Weingarten, M.D., that he can walk up two flights of stairs without stopping and is able to do some minimal yard work. Tr. 340. The ALJ reasonably found that this report of modest exertion was inconsistent with Ms. Ladd's report of extreme debilitation. In addition, as the ALJ also noted, Ms. Ladd's reports are inconsistent with the findings of Dr. Brewster. Notably, Ms. Ladd's statement that plaintiff needs five to ten minutes of rest after walking 20 to 30 feet is inconsistent with plaintiff's ability to walk on a slight incline for 13 minutes without a significantly increased rate of respiration. Tr. 264-281. I conclude that the ALJ cited germane reasons, supported by substantial record evidence, to reject Ms. Ladd's opinion.

///

///

15 - OPINION AND ORDER

## III. Vocational Expert Testimony

### A. The "Sit/Stand" Option

Plaintiff next argues that the VE's testimony was inadequate because the vocational hypothetical only contained a "sit/stand option," whereas the final RFC required that plaintiff be permitted to "sit or stand at will." In addition, plaintiff argues that the ALJ was required to specify for how much time plaintiff could sit or stand in the "sit/stand option." This argument is without merit.

Plaintiff has cited no authority, and the court has found none, for the proposition that a "sit/stand option" is inconsistent with a restriction to "sit or stand at will." Rather, common sense dictates that a "sit/stand option" means exactly what it says; plaintiff must have the option to either sit or stand at work. This is consistent with a requirement that plaintiff have the ability to "sit or stand at will." The vocational hypothetical and RFC were consistent in this respect.

### B. Alleged Deviations from the DOT

Plaintiff next argues that the VE testimony was inadequate because the vocational hypothetical assumed a person who could never lift ten pounds, yet the VE's jobs finding assumed a person who could perform sedentary work, which requires lifting up to ten pounds. I disagree.

In the vocational hypothetical the ALJ posed at the hearing, the ALJ stated plaintiff is "limited in lifting . . . less than 10 pounds both occasionally as well as frequently." Tr. 85. After this hypothetical, the VE clarified, "[t]hat would be at sedentary level," to which the ALJ responded affirmatively. Tr. 86. The ALJ was aware, as he wrote in his opinion, that sedentary work required the ability to lift up to ten pounds. Tr. 27. It is clear from the transcript as a whole that the ALJ and VE both understood the lifting limitation to be consistent with a limitation to sedentary work.[3] The jobs cited by the VE and relied upon in the written decision are consistent with this understanding. Because each of the jobs cited by the VE require only a sedentary exertional level, the VE did not deviate from the DOT in finding that plaintiff could perform those jobs under the vocational hypothetical.[4] Thus, I also reject plaintiff's final argument that the above alleged

---

[3] I acknowledge that the ALJ's initial verbal recitation was unclear as to whether he was limiting plaintiff to lifting up to ten pounds, or limiting plaintiff to lifting some lesser amount. Because imprecise verbal statements are unavoidable in any live hearing, I look to the transcript as a whole to determine whether the ALJ and VE had a common understanding about the limitations posed in the hypothetical. In this instance, I conclude that they did, and that understanding was reflected in the ultimate RFC.

[4] Plaintiff also argues that the "sit/stand option" deviated from the DOT. The DOT, however, does not include such postural requirements. The ALJ was entitled to rely on the VE's expertise in this respect.

17 - OPINION AND ORDER

inconsistencies make the ALJ's decision unsupported by substantial evidence.

### CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this __/__ day of July, 2013.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

18 - OPINION AND ORDER